Barnard, P. J.
The proof of the capacity of the testator seems to be proven without much contradiction. He was very sick for the last five days of his life, but no one testified to a fact which tends to show that his mind was affected. He was very weak and that was all. The president, and cashier of the Sing Sing bank saw him within a very short time before the will was made and the witness Macord had an interview the day after its execution. Nothing suggests unsoundness which took place at these interviews. The conversation was brief, as was proper in the testator's weak condition, hue his reasoning faculties were clear and his memory and observation of events sound. Assum *880 ing a capable testator the proof is very strong against the allegation that the will was procured by undue influence. He lived, at the date of the execution of the will, in the house with his two only surviving sisters. They, assisted by Mrs. Havens, a wife of a deceased brother, took care of him until his death. The testator had a house, but he said that he had helped them and that he wished all his property to go to his two sisters. The will was read to him and, according to one witness, he said it was satisfactory and, according to another, it was read, and “I asked him if he requested me to witness the will, and he gave assent.” “I asked him if he acknowledged that as his last will and testament, and he nodded his head.” Neither Mrs. Post or Mrs. DeLamater, who were the sisters of the deceased, were present when the will was read, although they came in before it was signed, but nothing was said by them, or either of them, beyond a remark about finding a book to put under the will when it was signed. ' The testimony of the witness McCaske, furnishes no proof of undue influence; he says he was employed by one of the sisters to obtain a will from the testator in favor of himself and sister, and he proposed one to that effect; that he asked the testator to dispose of his affairs, and he said hewasnot ready; after a conversation of some twenty minutes he said to the witness, “Bring it on;” the witness then left the room and completed the will, “then he signed it; ” there were three witnesses to the will, but one Nowike came in after it was signed; the testator acknowledged to him his signature and requested him to become a witness to it. Under the peculiar circumstances of the case the narrative of the witnesses Nowike and Havens seem the most en titled to credit where it differs from McCaski. He has had a dispute with the executrix in respect to his bill for drawing the will, and this is now the subject ■of an action. The order of the surrogate should be affirmed, with costs.
Pratt, J., concurs.